1  JOSEPH H. HUNT
   Assistant Attorney General
2  ALEX G. TSE
   United States Attorney
3  JOHN R. TYLER
   Assistant Director
4  W. SCOTT SIMPSON (Va. Bar #27487)
   Senior Trial Counsel
5  Department of Justice, Civil Division
   318 South Sixth Street, Room 244
6  Springfield, Illinois 62701
   Telephone:  (202) 514-3495
7  Facsimile:  (217) 492-4888
   E-mail:      scott.simpson@usdoj.gov
8  COUNSEL FOR DEFENDANTS
9  (*See signature page for parties represented.*)

10

11                    IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                         SAN FRANCISCO DIVISION

14  | | |
| --- | --- |
| CITY AND COUNTY OF SAN FRANCISCO, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL DISMISSAL OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Plaintiff, | |
| v. | |
| MATTHEW G. WHITAKER, Acting Attorney General of the United States, *et al*., | Date:      February 13, 2019<br>Time:      2:00 p.m. |
| Defendants. | No. 3:18-cv-05146-WHO |
| STATE OF CALIFORNIA, *ex rel*. XAVIER BECERRA, Attorney General of the State of California, | |
| Plaintiff, | |
| v. | |
| MATTHEW G. WHITAKER, Acting Attorney General of the United States, *et al*., | |
| Defendants. | No. 3:18-cv-05169-WHO |

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION FOR PARTIAL DISMISSAL
OR PARTIAL SUMMARY JUDGMENT ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

INTRODUCTION ............................................................................................................. 1

STATUTORY AND ADMINISTRATIVE BACKGROUND ............................................. 3

    I.     The Immigration and Nationality Act ..................................................... 3

    II.    DOJ Office of Justice Programs and the Byrne JAG Program ................. 5

ARGUMENT ..................................................................................................................... 9

    I.     The Public-Disclosure Condition Is Permissible .................................... 9

        A.    The Public-Disclosure Condition Is Authorized by Statute
             and Does Not Violate the Separation of Powers ........................... 9

        B.    The Public-Disclosure Condition Is Consistent with
             the Spending Clause ..................................................................... 13

            1.    This Condition Is Related to the Purposes
                of the Byrne JAG Program .............................................. 13

            2.    This Condition Is Unambiguous ..................................... 15

    II.    The Public-Disclosure Condition and the Requirement to Provide
        Information about Laws and Policies in a Byrne JAG Application
        Are Consistent with the Administrative Procedure Act ........................... 16

    III.    California's Tenth Amendment Claim Misconstrues the FY 2018
        Custody and Interview Conditions ........................................................ 19

    IV.    Any Injunction Should be Limited to the Plaintiffs ................................ 20

CONCLUSION ................................................................................................................ 21

1

# TABLE OF AUTHORITIES

2

3

**CASES**

4

*Arizona v. United States*, 567 U.S. 387 (2012) .......................................................... 4, 19

5

*Barbour v. Wash. Metro. Area Transit Auth.*, 374 F.3d 1161 (D.C. Cir. 2004) .......................... 13

6

*Bell v. Reno*, 218 F.3d 86 (2d Cir. 2000) ................................................................ 11

7

*Benning v. Georgia*, 391 F.3d 1299 (11th Cir. 2004) ...................................................... 16

8

9

*Charles v. Verhagen*, 348 F.3d 601 (7th Cir. 2003)........................................................ 16

10

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)................................. 17, 19

11

*City & Cty. of San Francisco v. Trump*, 897 F.3d 1225 (9th Cir. 2018) .................................... 21

12

*Clinton v. City of N.Y.*, 524 U.S. 417 (1998) ............................................................ 10

13

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
      527 U.S. 666 (1999)................................................................................. 13

14

15

*DKT Mem'l Fund Ltd.*, 887 F.2d 275 ...................................................................... 10

16

*Duvall v. Atty. Gen. of U.S.*, 436 F.3d 382 (3d Cir. 2006) ............................................... 14

17

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ........................................... 17, 18

18

*Gill v. Whitford,* 138 S. Ct. 1916 (2018)................................................................ 21

19

20

*J & G Sales Ltd. v. Truscott*, 473 F.3d 1043 (9th Cir. 2007)............................................. 17

21

*Johnson v. Consumerinfo.com, Inc.*, 745 F.3d 1019 (9th Cir. 2014)............................... 11, 12, 13

22

*Koslow v. Pennsylvania*, 302 F.3d 161 (3d Cir. 2002) .................................................... 14

23

*Los Angeles Haven Hosp. v. Sebelius*, 638 F.3d 644 (9th Cir. 2011) ...................................... 21

24

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ............................................... 13, 16

25

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012)............................................. 13

26

*Navarro v. Block,* 250 F.3d 729 (9th Cir. 2001) .......................................................... 9

27

*New York v. United States*, 505 U.S. 144 (1992) ......................................................... 13

28

ii

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ................................................................... 14

*Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181 (9th Cir. 2010) ................................... 17

*South Dakota v. Dole*, 483 U.S. 203 (1987) ........................................................... 13, 15, 16

*Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) ......................................... 21

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) .............................................................. 21

*Van Wyhe v. Reisch*, 581 F.3d 639 (8th Cir. 2009) ...................................................... 16

*Virginia Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379 (4th Cir. 2001) ............................... 21

**STATUTES**

5 U.S.C. § 552(b)(7) ..................................................................................... 18

8 U.S.C. § 1101 *et seq.* ................................................................................ 3

8 U.S.C. § 1101(b)(3) .................................................................................... 4

8 U.S.C. § 1227(a)(2) ................................................................................ 4, 14

8 U.S.C. § 1226(c) ...................................................................................... 14

8 U.S.C. § 1226(d) ...................................................................................... 19

8 U.S.C. § 1228(a) ...................................................................................... 14

8 U.S.C. § 1231(a)(6) ................................................................................... 14

8 U.S.C. § 1252c ......................................................................................... 5

8 U.S.C. § 1306 .......................................................................................... 4

8 U.S.C. § 1324(a) ....................................................................................... 4

8 U.S.C. § 1324(c) ....................................................................................... 5

8 U.S.C. § 1357(g) .................................................................................... 5, 19

8 U.S.C. § 1366 .......................................................................................... 4

8 U.S.C. § 1373 ......................................................................................... 19

8 U.S.C. § 1378 ............................................................................................ 14

28 U.S.C. § 510 ............................................................................................ 11

34 U.S.C. § 10102(a)(2) .................................................................. 3, 5, 10, 19

34 U.S.C. § 10102(a)(6) .......................................................................... 10, 11

34 U.S.C. § 10141(b) .................................................................................... 11

34 U.S.C. § 10152(a)(1) ........................................................................... 6, 14

34 U.S.C. § 10153(a) .................................................................... 3, 6, 10, 11

34 U.S.C. § 10156 .......................................................................................... 6

34 U.S.C. § 10202(c)(1) .................................................................................. 6

34 U.S.C. § 10251(a)(1) .................................................................................. 6

42 U.S.C. § 3712(a)(6) (2005) ..................................................................... 11

Pub. L. No. 90-351, 82 Stat. 197 (1968) ......................................................... 2

Pub. L. No. 109-162, 119 Stat. 2960 (2006) ........................................... 10, 11

**EXECUTIVE ORDERS**

Exec. Order No. 13,688, 80 Fed. Reg. 3451 (Jan. 16, 2015), *rescinded by*
     Exec. Order No. 13,809, 82 Fed. Reg. 41,499 (Aug. 28, 2017) ................... 6

**NOTICE OF MOTION AND MOTION FOR PARTIAL DISMISSAL
OR PARTIAL SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that on Wednesday, February 13, 2019, at 2:00 p.m., or as soon thereafter as counsel may be heard, before The Honorable William H. Orrick, in Courtroom 2, 17th Floor, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, the defendants will move, and hereby do move, for partial dismissal of these actions under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, alternatively, for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Defendants seek dismissal or judgment as to plaintiffs' claims regarding the public-disclosure condition in the Fiscal Year 2018 Edward Byrne Memorial Justice Assistance Grant Program – and, to the extent plaintiffs challenge it, the requirement to provide information regarding the applicant's laws and policies as part of a Byrne JAG application.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Law enforcement in this country is a cooperative endeavor.  Unlawful acts often implicate the jurisdiction of more than one agency, and thus local, state, tribal, and federal officials work together in a variety of ways to fight crime and ensure public safety.  In order to work together effectively and safely, the free flow of law enforcement information is essential.  Each law enforcement agency possesses different information and different tools for collecting intelligence. When agencies operate in isolation, no agency has the complete picture, and the implications for public safety can be dire.  Further, when agencies conduct law enforcement operations, they must "de-conflict" to protect officer safety and ensure that other agencies do not inadvertently jeopardize their operations.  *See, e.g.*, Nationwide Officer Safety Event Deconfliction, National Criminal Intelligence Resource Center, https://www.ncirc.gov/ Deconfliction/ (last visited Dec. 3, 2018); Best Practices in Event Deconfliction, Commission on Accreditation for Law Enforcement

---

[1] Plaintiffs name "DOES 1-100" as defendants in these actions but do not identify those individuals or specify the capacity in which they are being sued.  Undersigned counsel does not purport to represent those individuals, and claims against them are not at issue in this motion. Moreover, because those individuals have not been named or served, granting this motion would resolve this litigation in its entirety.

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

Agencies, https://www.calea.org/ sites/ default/ files/ EventDecrofliction_PoliceFoundation.pdf (last visited Dec. 3, 2018).  Obviously, information-sharing will be diminished if agencies fear that recalcitrant jurisdictions will publicly release information shared through these channels for purposes of subverting the law.

San Francisco and California challenge certain program requirements in the Fiscal Year ("FY") 2018 Edward Byrne Memorial Justice Assistance Grant Program ("Byrne JAG Program"). Both plaintiffs challenge these requirements under the Separation of Powers and the Spending Clause.  California also alleges that the requirements violate the Administrative Procedure Act and the Tenth Amendment.  This Court has previously considered certain conditions on the Byrne JAG formula grant program from the previous fiscal year.  Defendants respectfully disagree with the Court's holdings in those cases, and hereby reiterate, incorporate, and preserve for further review the arguments they made therein.[2]

In the present cases, plaintiffs also challenge a new condition not previously considered by this Court.  Beginning in FY 2018, the Office of Justice Programs ("OJP" or "Office") is requiring that Byrne JAG recipients not publicly disclose information obtained through law enforcement channels for the purpose of frustrating law enforcement operations.  That the Department of Justice ("Department") would include such a requirement as a condition on federal law enforcement funds should be unsurprising.  When Congress created OJP, which is the Department's primary grant-making component, it made a specific finding that "law enforcement efforts must be better coordinated, intensified, and made more effective at all levels of government."  Pub. L. No. 90-351, 82 Stat. 197 (1968).

Consistent with that congressional finding, the purpose of this Byrne JAG condition is obvious:  If law enforcement partners at various levels of government are going to work together to

---

[2] *See San Francisco v. Sessions*, No. 3:17-cv-04642-WHO (N.D. Cal.),  Dkt. Nos. 113, 134; *California v. Sessions*,  No. 3:17-cv-04701-WHO (N.D. Cal.), Dkt. Nos. 124, 131.  Defendants will not discuss at length herein certain FY 2018 grant conditions that are very similar to FY 2017 conditions that this Court has already enjoined.  Defendants also will not repeat at length their arguments regarding the constitutionality of Section 1373, which apply equally to 8 U.S.C. § 1644.

1   address public safety, they must be free to share information without fear that the information will

2   be misappropriated and misused.  That plaintiffs are now seeking to vindicate a contrary position is

3   remarkable.  OJP's authority to include this condition is clear:  The Office is authorized to

4   "maintain liaison with . . . State governments in matters relating to criminal justice."  34 U.S.C.

5   § 10102(a)(2).  The need for this condition is even clearer given that an elected local official in

6   California recently made public an impending federal law enforcement operation, intentionally

7   frustrating the enforcement of federal law and putting officers' lives at risk.  Moreover, this

8   condition applies to federal law enforcement information regarding both illegal aliens and

9   "fugitive[s] from justice" under the federal criminal laws, further illustrating the condition's

10   relationship to the purposes of the Byrne JAG Program.

11       San Francisco also appears to challenge the inclusion of a new question in the Byrne JAG

12   grant application related to an applicant's information-sharing policies.  This is not an award

13   condition, and the Department has considerable discretion in crafting its grant applications.  Indeed,

14   Byrne JAG applicants must submit an application "in such form as the Attorney General may

15   require."  34 U.S.C. § 10153(a).  Further, because the purpose of this requirement relates to condi-

16   tions the Department is not currently enforcing against the plaintiffs, the Department is not

17   currently enforcing this application requirement.

18       For these reasons, plaintiffs' claims against the public-disclosure condition in the FY 2018

19   Byrne JAG Program – and the requirement to provide information regarding the applicant's laws

20   and policies, to the extent plaintiffs challenge it – should be dismissed or judgment should be

21   entered for the defendants on those claims.

22                      **STATUTORY AND ADMINISTRATIVE BACKGROUND**

23   **I.       The Immigration and Nationality Act**

24       Enforcement of the immigration laws, including and especially the investigation and

25   apprehension of criminal aliens, is quintessentially a law enforcement function.  Through the

26   Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, Congress granted the Executive

27   Branch significant authority to control the entry, movement, and other conduct of foreign nationals

28

                                      3

1   in the United States.  These responsibilities are assigned to law enforcement agencies, as the INA

2   authorizes the Department of Homeland Security ("DHS"), the Department of Justice, and other

3   Executive agencies to administer and enforce the immigration laws.  The INA gives the Executive

4   Branch considerable authority and discretion to conduct and direct immigration enforcement

5   pursuant to federal policy objectives.  *See Arizona v. United States*, 567 U.S. 387, 396-97 (2012).

6       Several outcomes and federal agency responsibilities under the INA turn on the existence

7   and timing of local or state criminal proceedings against aliens.  For example, the INA provides that

8   aliens who have committed certain classes of crimes – whether federal, state, or local – shall be

9   removed from the United States upon order of the Attorney General or the Secretary of Homeland

10  Security.  *See*, *e.g.*, 8 U.S.C. § 1227(a)(2).  A specific statute provides that every twelve months, the

11  Attorney General must report to the House and Senate judiciary committees on "the number of

12  illegal aliens convicted of felonies in any Federal or State court [during the preceding year]" and

13  "the number of illegal aliens incarcerated in Federal and State prisons for having committed

14  felonies" – "stating the number incarcerated for each type of offense."  *Id.* § 1366(1), (2).

15      The connection between immigration law and criminal law is also reflected in the fact that

16  the INA contains a number of criminal provisions related to immigration.  For example, the statute

17  imposes criminal penalties on an alien for failing to register with federal authorities and for failing

18  to notify federal authorities of a change of address.  *Id.* §§ 1306(a), (b).  More seriously, the INA

19  imposes criminal penalties on any person who conceals, harbors, or shields an alien from detention

20  "in any place, including any building or any means of transportation," "knowing or in reckless

21  disregard of the fact that an alien has come to, entered, or remains in the United States in violation

22  of law."[3]  *Id.* § 1324(a)(1)(A)(iii).  It also imposes penalties for "engag[ing] in any conspiracy to

23  commit any of the preceding acts" and for "aid[ing] or abet[ting] the commission of any of [those]

24  acts."  *Id.* § 1324(a)(1)(A)(v).

25      The INA repeatedly contemplates coordination between federal officials and state and local

26  officials on immigration enforcement.  For example, state and local officers are authorized to make

27      [3] "Person" for purposes of that crime means "an individual or an organization."  8 U.S.C.

28  § 1101(b)(3).

4

1   arrests for violation of the INA's prohibitions against smuggling, transporting, or harboring aliens,

2   *id*. § 1324(c), and to arrest certain felons who have unlawfully returned to the United States, *id*.

3   § 1252c; *see id*. § 1357(g) (authorizing formal cooperative agreements under which trained and

4   qualified state and local officers may perform specified functions of a federal immigration officer in

5   relation to the investigation, apprehension, or detention of aliens).  Consistent with this coordination

6   and with the importance of state and local criminal proceedings under the INA, certain provisions

7   of federal immigration law protect the transfer of information regarding aliens between and among

8   federal officials and state and local government entities.  Section 1373 of Title 8 provides that "a

9   Federal, State, or local government entity or official may not prohibit, or in any way restrict, any

10  government entity or official from sending to, or receiving from [federal immigration authorities]

11  information regarding the citizenship or immigration status, lawful or unlawful, of any individual."

12  Section 1644 of Title 8 contains substantially the same proscription.  Section 1373 also states that

13  no person or agency may prohibit or restrict a federal, state, or local government entity from

14  "[m]aintaining such information" or from "[e]xchanging such information with any other Federal,

15  State, or local government entity."  By the same token, the INA requires federal immigration

16  authorities to "cooperate with the States" to ensure that state and local officials have information to

17  assist them in making arrests under the INA.  *Id.* § 1252c(b).

18  **II.      DOJ Office of Justice Programs and the Byrne JAG Program**

19          As described in prior filings before this Court, the Assistant Attorney General ("AAG") for

20  OJP possesses "[s]pecific, general and delegated powers," including the power to "maintain liaison

21  with . . . State governments in matters relating to criminal justice."  34 U.S.C. § 10102(a)(2).  The

22  statute also authorizes the AAG to "exercise such other powers and functions as may be vested in

23  [him] pursuant to this chapter or by delegation of the Attorney General, including placing special

24  conditions on all grants, and determining priority purposes for formula grants."  *Id.* § 10102(a)(6).

25          The predecessor to the Byrne JAG Program was created in the same statute that created

26  OJP.  Under this program, OJP is authorized to "make grants to States and units of local

27  government . . . to provide additional personnel, equipment . . . and information systems for

28

1 criminal justice, including for any one or more of [certain enumerated] programs." *Id.*

2 § 10152(a)(1).  In the same chapter, "criminal justice" is defined broadly to include various

3 activities of the police, the courts, and "related agencies." *Id.* § 10251(a)(1).

4      The Byrne JAG Program provides "formula grants" – that is, grants that, when awarded,

5 must follow a statutory formula based on population, the rate of violent crime, and other factors. *Id.*

6 § 10156.  By statute, in order to request a Byrne JAG grant, the chief executive officer of a State or

7 unit of local government must submit an application "in such form as the Attorney General may

8 require," *id.* § 10153(a), and the application must include, among other things, "[a] certification,

9 made in a form acceptable to the Attorney General . . . that . . . the applicant will comply with . . .

10 all . . . applicable Federal laws," *id.* § 10153(a)(5)(D).

11      OJP has historically included a variety of conditions in Byrne JAG awards.  For example,

12 the Office has imposed, without objection, conditions related to information-sharing and privacy

13 protection, *see* Defs' Request for Judicial Notice ("RJN"), Ex. A (San Francisco's 2016 JAG

14 award) ¶ 30, research using human subjects, *see id.* ¶ 29, and training, *see id.* ¶¶ 32-33; *see also*

15 RJN, Ex. B. (California's 2016 JAG award) ¶¶ 30, 31, 33-34.  Other historical conditions imposed

16 by the Assistant Attorney General have been inspired by Executive Branch prerogatives, and in

17 some instances resulted in *subsequent* congressional codification.  One such condition, which

18 prohibited use of Byrne JAG funds to purchase military style equipment, related in part to an

19 Executive Order issued by President Obama in 2015.  *See* RJN, Ex. A ¶ 49; Exec. Order No.

20 13,688, 80 Fed. Reg. 3451 (Jan. 16, 2015), *rescinded by* Exec. Order No. 13,809, 82 Fed. Reg.

21 41,499 (Aug. 28, 2017); *see also* RJN, Ex. B. ¶ 44.  Since 2012, other conditions have required that

22 recipients: (a) comply with specific national standards when purchasing body armor and (b)

23 institute a "mandatory wear" policy for any purchased armor.  RJN, Ex. A ¶¶ 38-39; Ex. B ¶¶ 39-

24 40.  While those conditions have now been codified by Congress, *see* 34 U.S.C. §§ 10202(c)(1)(B),

25 (C), they originated as exercises of USDOJ's authority to impose special conditions.  And the AAG

26 has imposed an "American-made" requirement for body armor purchases, something Congress did

27 not choose to codify last year.  RJN, Ex. A ¶ 38; Ex. B ¶¶ 39.  In recent years, the number of

28

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

conditions attached to Byrne JAG Grants has typically numbered in the several dozen.  *See* RJN, Ex. A (San Francisco's 2016 award, containing 51 conditions); Ex. B (California's 2016 award, containing 55 conditions).  The conditions attached to Byrne JAG grants have varied over time, depending on national law enforcement necessities and Department priorities.

For the current Byrne JAG grant cycle, Fiscal Year 2018, OJP notified potential applicants that awards under the Program would include certain conditions requiring modest cooperation with federal law enforcement responsibilities in the immigration setting.  As now issued to most of the 2018 applicants, including California, San Francisco, and other political subdivisions in the State,[4] those conditions require Byrne JAG recipients, within the "program or activity" funded by the award:

- Consistent with the objectives of federal law enforcement statutes – including 8 U.S.C. § 1324(a), the smuggling/harboring statute referred to above, and 18 U.S.C. § 1071 – not to publicly disclose any sensitive federal law enforcement information in an attempt to harbor or shield from detection either a "fugitive from justice" under the federal criminal laws or an alien who "has come to, entered, or remains in the United States" in violation of federal immigration law, regardless of whether the disclosure would violate 8 U.S.C. § 1324(a) ("public-disclosure condition"), RJN, Ex. C ¶ 44, Ex. D ¶ 44;[5]

- Consistent with federal law enforcement statutes and regulations – including 8 U.S.C. § 1357(a)(1), the INA interrogation statute referred to above, and 8 C.F.R. § 287.5(a)(1) – not to interfere with the exercise of that authority by impeding the access of immigration officials to any correctional facility to meet with an alien for such an interrogation (the "interview condition"), RJN, Ex. C ¶ 45, Ex. D ¶ 45;

- Consistent with federal law enforcement statutes – including 8 U.S.C. §§ 1231(a) and 1226(c)(1), the statutes requiring federal immigration officials to take custody of a criminal

---

[4] The issuance of the FY 2018 Byrne JAG awards to California and its political subdivisions has mooted the State's request for a writ of mandamus compelling issuance of the awards.  CA FAC at 38.

[5] Exhibits C and D of Defendants' Request for Judicial Notice are the FY 2018 Byrne JAG awards to San Francisco and California, respectively.

7

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

alien "when the alien is released" from state or local custody – not to interfere with the removal process by failing to notify immigration officials "as early as practicable" regarding the scheduled release date and time of an alien in the grantee's custody when requested by immigration officials (the "custody condition"), RJN, Ex. C ¶ 46, Ex. D ¶ 46; and

- To comply with 8 U.S.C. §§ 1373 and 1644, and not to obligate or draw down grant funds if the recipient is subject to any prohibition or restriction against providing information regarding immigration status to federal authorities (the "information condition"), RJN, Ex. C ¶ 41-43, Ex. D ¶ 41-43.

Under the "Rules of Construction" within those grant conditions, the FY 2018 award documents make clear that nothing in the custody condition requires a Byrne JAG grantee to detain "any individual in custody beyond the date and time the individual otherwise would have been released." RJN, Ex. C ¶ 46; RJN, Ex. D ¶ 46. The documents also make clear that this condition imposes no requirements in relation to any requests from federal immigration author-ities to detain non-citizens, and that the condition requires "only as much advance notice as practicable" before the release of an alien. *Id.* Further, the award documents define "impeding" access to a correctional facility, for purposes of the interrogation condition, as taking any action or following any law or policy that "is designed to prevent or to significantly delay or complicate" such access or that "has the effect of preventing or of significantly delaying or complicating" such access. RJN, Ex. C ¶ 45, Ex. D ¶ 45.

In order to assess the accuracy of each recipient's certification that it could fulfill the above conditions, the FY 2018 Byrne JAG solicitation stated that each applicant would be required to identify any governing "laws, policies, or practices related to whether, when, or how [the appli-cant's] employees may communicate" with federal immigration authorities. Admin. Record at AR01193 (2018 Local Solicitation at 27); *id.* at AR01250 (2018 State Solicitation at 27).[6] However, given that OJP is not enforcing against the plaintiffs the FY 2018 conditions regarding communication with federal immigration authorities, the Office is also not enforcing this

---

[6] The Administrative Record in each these actions was filed with a Notice of Filing of Administrative Record on December 3, 2018. SF Dkt. No. 26; CA Dkt. No. 24.

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

1   requirement regarding Byrne JAG applications.

2   **ARGUMENT**

3   Defendants move, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for

4   dismissal of plaintiffs' challenge to the FY 2018 public-disclosure condition (and to the require-

5   ment to provide information regarding the applicant's laws and policies, to the extent plaintiffs

6   challenge it), or for summary judgment on those challenges under Rule 56.  A motion under Rule

7   12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.

8   2001).  A court must grant summary judgment "if the movant shows that there is no genuine dispute

9   as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

10  56(a).

11  With respect to other FY 2018 Byrne JAG conditions, defendants recognize that this Court

12  has ruled against conditions used in the FY 2017 Byrne JAG Program that were similar to the FY

13  2018 interview, custody, and information conditions, and that the Court has ruled against the consti-

14  tutionality of 8 U.S.C. § 1373.  SF FAC ¶¶ 124-126; CA FAC ¶ 124.  Defendants also recognize

15  that the Court's injunctions apply to future grant years.  Defendants respectfully disagree with those

16  rulings, but do not now repeat in full their arguments in defense of the interview, custody, and

17  information conditions in the FY 2018 Byrne JAG Program, other than to incorporate herein their

18  arguments made previously and to preserve them for further review.  *See San Francisco v.*

19  *Sessions*, Dkt. Nos. 113, 134; *California v. Sessions*, Dkt. Nos. 124, 131.  Defendants retain their

20  right to elaborate upon those arguments based on the outcome of *San Francisco v. Whitaker* (9th

21  Cir.), *California v. Whitaker* (9th Cir.), as well as other cases addressing related issues.

22  **I.      The Public-Disclosure Condition Is Permissible**

23        **A.      The Public-Disclosure Condition Is Authorized by Statute and**
   **Does Not Violate the Separation of Powers**

24  In Count One of San Francisco's First Amended Complaint and Counts One and Two of

25  California's First Amended Complaint, plaintiffs allege that the FY 2018 Byrne JAG conditions

26  exceed the Department's statutory authority and intrude upon the powers of Congress.  SF FAC

27  ¶¶ 111-120; CA FAC ¶¶ 108-119.  As noted above, defendants reserve their arguments regarding

28

9

the FY 2018 conditions that are similar to the FY 2017 conditions, pending resolution in the Ninth Circuit.  With respect to the other requirements, an examination of the relevant statutes, with their framework and history, shows that the Assistant Attorney General for OJP possesses ample authority to impose the public disclosure condition and the grant application requirement.[7]

As a preliminary matter, it is well-established that Congress may, consistent with the separation of powers, properly delegate to the Executive Branch the authority to impose requirements on recipients of agency spending.  *See*, *e.g.*, *Clinton v. City of N.Y.*, 524 U.S. 417, 488 (1998) ("Congress has frequently delegated the President the authority to spend, or not to spend, particular sums of money.") (Breyer, J. dissenting); *DKT Mem'l Fund Ltd.*, 887 F.2d 275 at 280-81 (upholding conditions on spending where statute authorized President to set certain "terms and conditions as he may determine").  Accordingly, plaintiffs' assertion that Congress itself does not currently impose immigration-related requirements on the receipt of grant funds, SF FAC ¶ 24; CA FAC ¶¶ 6, 50-51, is wholly beside the point.  Rather, the sole relevant question here is whether Congress has *delegated* sufficient authority to the Department to impose these requirements.

The history of 34 U.S.C. § 10102(a)(6) and the structure of the relevant statutes demonstrate that Congress has delegated such authority to OJP.  As described earlier, the AAG is authorized to place "special conditions on all grants," to determine "priority purposes for formula grants," 34 U.S.C. § 10102(a)(6), to "maintain liaison with . . .  State governments in matters relating to criminal justice," *id*. § 10102(a)(2), and to require compliance with all "applicable Federal laws," *id.* § 10153(a)(5)(D).  Congress created the current version of the Byrne JAG Program in 2006, when the Reauthorization Act merged two earlier programs.  Pub. L. No. 109-162, 119 Stat. 2960.  Before the 2006 amendments, the relevant statute provided only that the AAG for OJP was authorized to "exercise such other powers and functions as may be vested in

---

[7] The discussion below focuses on the public-disclosure condition, given that OJP is not enforcing the requirement to provide information about the applicant's laws and policies as part of an FY 2018 Byrne JAG application.  San Francisco includes that requirement within what the City calls the "FY 2018 Section 1373 Requirement."  SF FAC at 14 n.15.  California describes the requirement but does not expressly include it any claim.  CA FAC ¶ 74.  To the extent either of the plaintiffs persists in challenging that requirement, it is permissible for the same reasons stated below.

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

the [AAG] pursuant to this chapter or by delegation of the [Attorney General]."  *See* 42 U.S.C.

§ 3712(a)(6) (2005).  In the Reauthorization Act, Congress expressly amended this provision by

inserting the words "including placing special conditions on all grants, and determining priority

purposes for formula grants."  Pub. L. No. 109-162, § 1152(b), 119 Stat. at 3113; *see* 34 U.S.C.

§ 10102(a)(6).  And confirming this amendment's plain text, a committee report accompanying

the Act states unequivocally that the amendment would "allow[] the Assistant Attorney General

to place special conditions on all grants and to determine priority purposes for formula grants."

H.R. Rep. No. 109-233, at 101 (2005).

Moreover, this authority clearly applies to the Byrne JAG Program.  Section 10102(a) sets

forth the general duties and authorities of the AAG for OJP, and the Bureau of Justice Assistance,

which directly administers the Byrne JAG Program, is part of OJP.  By statute, the Director of the

Bureau of Justice Assistance "report[s] to the Attorney General through the Assistant Attorney

General [for OJP]."  34 U.S.C. § 10141(b); *see* About Us, OJP, https://ojp.gov/ about/ about.htm

(OJP organizational chart) (last visited Dec. 3, 2018).  Thus, the authority conferred on the AAG

by Section 10102(a)(6) necessarily reaches all programs under his supervision, including the

Byrne JAG Program.

Plaintiffs' claims fail to explain why Congress would have added the "special conditions"

and "priority purposes" language, if not to confer the authority described.  Another law *already*

authorized the Attorney General to delegate the performance of his functions.  *See* 28 U.S.C.

§ 510.  Thus, plaintiffs' denial of this authority gives no practical effect to *either* the "special

condition" *or* the "priority purpose" power – and directly contravenes the "well-known canon of

statutory construction that, in general, a statute should not be construed so as to render a word or

clause inoperative"  *Bell v. Reno*, 218 F.3d 86, 91 (2d Cir. 2000); *see*, *e.g.*, *Johnson v.

Consumerinfo.com*, *Inc.*, 745 F.3d 1019, 1022 (9th Cir. 2014) ("When Congress acts to amend a

statute, we presume it intends its amendment to have real and substantial effect.") (citation

omitted).  The express statutory requirement to submit a Byrne JAG application "in such form as

the Attorney General may require," 34 U.S.C. § 10153(a), further confirms OJP's authority to

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

1   require applicants to provide information about any governing laws and policies regarding

2   communication with federal immigration authorities.

3       Further, the independent authority to "determin[e] priority purposes for formula grants"

4   plainly reflects an intent to allow the AAG to exercise a degree of discretion over *formula* grants

5   in particular.  Such discretion must, if this language is to be afforded any meaningful legal effect,

6   encompass at least the minimal authority to (1) articulate broad priorities for a given Fiscal Year's

7   grant program; (2) include, on program application forms, inquiries regarding the designated

8   priority purpose; and (3) protect the confidentiality of related federal law enforcement

9   information.  In other words, the authority to "determine priority purposes" necessarily includes

10  the authority to *prioritize* federal grant monies for those state and local jurisdictions that assist in

11  furthering relevant federal *purposes*.  Additionally, because states and localities would decline to

12  participate in – and thus, effectively annul – the Byrne JAG Program were this authority invoked

13  to impose unreasonable conditions, any arguable risk of overreach that might otherwise inhere in

14  this authority has a built-in structural check.

15      Finally, California's assertion that these conditions constitute prohibited "direction,

16  supervision, and control" under 34 U.S.C. § 10228(a), *see* CA FAC ¶¶ 103, 126, is further belied

17  by plaintiffs' acceptance of numerous other Byrne JAG conditions.  Plaintiffs' Byrne JAG awards

18  for FY 2016, which they accepted without challenge, imposed more than fifty "special

19  conditions."  *See* RJN, Exs. A, B.  The plaintiffs agreed, for example, to refrain from certain

20  specific actions related to human trafficking, including any "[a]cts that directly support or

21  advance trafficking in persons," *see id.*, Ex. A ¶ 0; Ex. B ¶ 9; to comply with Department

22  regulations on civil rights and non-discrimination, including regulations prohibiting specific

23  forms of discrimination on the basis of religion, *see id.*, Ex. A ¶ 16; Ex. B ¶ 16; to refrain from

24  requiring employees to sign any "internal confidentiality agreement or statement that prohibits or

25  otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of

26  waste, fraud, or abuse," *see id.*, Ex. A ¶ 20; Ex. B. ¶ 20; and to complete law enforcement training

27

28

provided by OJP's Bureau of Justice Assistance, *see id.*, Ex. A ¶ 32; Ex. B ¶ 33.  If those condi-

tions do not constitute exercising "direction, supervision, and control" over grantees – as shown

by plaintiffs' own agreement to them – then neither do the immigration-related requirements

challenged here.

### B.  The Public-Disclosure Condition Is Consistent with the Spending Clause

In Count Two of San Francisco's First Amended Complaint and Count Four of Cali-

fornia's First Amended Complaint, plaintiffs allege that the FY 2018 Byrne JAG conditions

violate the Spending Clause.  SF FAC ¶¶ 121-123; CA FAC ¶¶ 128-132.  Under its spending

authority, Congress "may offer funds to the States, and may condition those offers on compliance

with specified conditions." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 537 (2012).  It is

well-established that the Spending Clause confers broad authority, such that conditions imposed

pursuant to this authority may permissibly require States to "tak[e] certain actions that Congress

could not [otherwise] require them to take." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ.*

*Expense Bd.*, 527 U.S. 666, 686 (1999).  Nevertheless, the spending authority is subject to certain

discrete limitations, two of which are purportedly at issue here:  (1) "conditions on federal grants

may be illegitimate if they are unrelated to the federal interest in particular national projects or

programs"; and (2) conditions must be "unambiguous[]." *South Dakota v. Dole*, 483 U.S. 203,

207 (1987).  The subject FY 2018 Byrne JAG requirements easily satisfy both of these aspects of

*Dole*.

### 1.  This Condition Is Related to the Purposes of the Byrne JAG Program

Initially, it is well-established that the "relatedness" aspect of *Dole* does not pose a

difficult hurdle; to the contrary, the Ninth Circuit has emphasized that this is a "low-threshold"

inquiry that "is a far cry from . . . an exacting standard for relatedness." *Mayweathers v.*

*Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002); *see New York v. United States*, 505 U.S. 144, 167

(1992) (stating that only "some relationship" is necessary between spending conditions and "the

purpose of the federal spending.").  As the D.C. Circuit has observed, the Supreme Court has

never "overturned Spending Clause legislation on relatedness grounds." *Barbour v. Wash. Metro.*

*Area Transit Auth.*, 374 F.3d 1161, 1168 (D.C. Cir. 2004).

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

The Byrne JAG Program promotes "criminal justice" by supporting programs such as law enforcement, prosecution, crime prevention, and corrections. 34 U.S.C. § 10152(a)(1). The term "criminal justice" is defined broadly to include various activities of the police, the courts, and "related agencies." *Id.* § 10251(a)(1). Further, immigration enforcement, which the challenged conditions promote, undoubtedly intersects with the Byrne JAG Program's criminal justice purposes, at a minimum for the simple reason that a conviction for any of a wide variety of criminal offenses renders an alien removable from this country. *See* 8 U.S.C. § 1227(a)(2). Indeed, the term "criminal alien" appears multiple times in the INA, and "[a] primary goal of several recent overhauls of the INA has been to ensure and expedite the removal of aliens convicted of serious crimes." 8 U.S.C. §§ 1226(c), 1228(a), 1231(a)(6), 1378; *Duvall v. Atty. Gen. of U.S.*, 436 F.3d 382, 391 (3d Cir. 2006); *see Padilla v. Kentucky*, 559 U.S. 356, 360 (2010) (observing that "deportation or removal is now virtually inevitable for a vast number of noncitizens convicted of crimes") (citation omitted). Once removed, a criminal alien who has committed a removable offense – for example, an aggravated felony, domestic violence, child abuse, or certain firearm offenses – is no longer present in this country with the potential to re-offend.

Thus, the public-disclosure condition ensures that any "program or activity" funded by the Byrne JAG Program does not thwart the federal government's exercise of its ability to remove aliens not lawfully present in the United States or removable due to a criminal conviction. *See Koslow v. Pennsylvania*, 302 F.3d 161, 176 (3d Cir. 2002) (observing that the challenged condition "govern[ed] only a 'program or activity' receiving federal funds," and noting that this limitation aided in satisfying "the 'relatedness' requirement articulated in *Dole*"). Declining to fund jurisdictions that disclose federal law enforcement information in an attempt to hinder federal law enforcement is plainly related to the criminal-justice purposes of the Byrne JAG Program. The relationship of the public-disclosure condition to the purposes of this program are even clearer given that the condition protects not only federal law enforcement information regarding illegal aliens, but also information regarding "fugitive[s] from justice" under the federal

1    criminal laws.  RJN, Ex. C ¶ 44, Ex. D ¶ 44.

2         Recent events further illustrate the need for this condition and its relationship to the

3    purposes of the program.  Included in the Administrative Record in these actions are public

4    Twitter and Facebook posts by the mayor of a California city informing residents of an impending

5    operation by federal immigration authorities.  Admin. Record at AR01038-39.  In those

6    communications, the executive of a U.S. jurisdiction specifically made a "public disclosure [of]

7    federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield

8    from detection . . . any alien who [had] come to, entered, or remain[ed] in the United States" in

9    violation of law.  Federal law enforcement officials must be able to inform state and local

10   officials of impending operations without fear of compromising those operations.  Such basic

11   coordination is essential not only for the success of operations but also for the safety of law

12   enforcement personnel and the public.

13        In sum, ensuring that jurisdictions receiving federal law enforcement funds do not hinder

14   the enforcement of immigration law supports the purposes the Byrne JAG Program.

15              **2.       This Condition Is Unambiguous**

16        Another limitation on the spending power is that when the Federal Government "desires to

17   condition the States' receipt of federal funds, it must do so unambiguously, enabling the States to

18   exercise their choice knowingly, cognizant of the consequences of their participation."  *Dole*, 483

19   U.S. at 207 (citation omitted).  The public-disclosure condition easily satisfies this aspect of *Dole*,

20   especially in light of the accompanying "Rules of Construction."

21        This condition states very clearly that it prohibits the "public disclosure [of] federal law

22   enforcement information in a direct or indirect attempt to conceal, harbor, or shield from

23   detection any fugitive from justice under 18 U.S.C. ch. 49, or any alien who has come to, entered,

24   or remains in the United States in violation of 8 U.S.C. ch. 12 – without regard to whether such

25   disclosure would constitute (or could form a predicate for) a violation of 18 U.S.C. [§§] 1071 or

26   1072 or of 8 U.S.C. [§] 1324(a).  The Rules of Construction, moreover, define "alien," "federal

27   law enforcement information," and "public disclosure" in detail.  To the extent any uncertainty

28

                                          15

1   might possibly remain, the grant award documents specifically direct that "[a]ny questions about

2   the meaning or scope" of the conditions "should be directed to OJP." *See* RJN, Ex. C ¶¶ 42-46;

3   Ex. D ¶¶ 42-46.[8]

4        Finally, any arguable marginal uncertainty regarding the outer boundaries of this

5   condition would not render it unconstitutionally ambiguous.  Indeed, "the exact nature of [grant]

6   conditions may be largely indeterminate, provided that the existence of the conditions is clear,

7   such that States have notice that compliance with the conditions is required." *Charles v.*

8   *Verhagen*, 348 F.3d 601, 607 (7th Cir. 2003) (citation omitted); *see Benning v. Georgia*, 391 F.3d

9   1299, 1306 (11th Cir. 2004) ("Once Congress clearly signals its intent to attach . . . conditions . . .

10  it need not specifically identify and proscribe in advance every conceivable state action that

11  would be improper." (citation omitted)); *see also Van Wyhe v. Reisch*, 581 F.3d 639, 650 (8th Cir.

12  2009) (finding notice requirement satisfied even where condition "provides a pliable standard");

13  *Mayweathers*, 314 F.3d at 1067 (finding notice requirement satisfied even with a "standard [that]

14  is perhaps unpredictable because it has resulted in different determinations in different courts").

15  **II.   The Public-Disclosure Condition and the Requirement to Provide
       Information about Laws and Policies in a Byrne JAG Application**

16  **Are Consistent with the Administrative Procedure Act**

17        Count Six of California's First Amended Complaint alleges that the decision to impose

18  the challenged Byrne JAG requirements was arbitrary and capricious under the Administrative

19  Procedure Act ("APA") "because Defendants have relied on factors that Congress did not intend,

20  failed to consider an important aspect of the program the agency is addressing, and has offered no

21

22

23

24  ─────────────────────
         [8] As for the requirement to provide information about the applicant's laws and policies,
25  the FY 2018 Byrne JAG solicitation asks very clearly whether the recipient has "any laws,
    policies, or practices related to whether, when, or how employees may communicate with DHS or
26  ICE" or is "subject to any [such] laws from a superior political entity (e.g., a state law that binds a
    city)." Admin. Record at AR01505.  And, to the extent any uncertainty might remain, the solici-
27  tation invites potential applicants to contact their assigned advisor or a dedicated assistance
    service. *Id.* at AR01168, AR01225.

28
     Defs' Motion for Partial Dismissal or SJ; Memo.
     No. 3:18-cv-05146/05169-WHO

1  explanation for adding the Immigration Enforcement Requirements that is consistent with the

2  evidence that is before the agency."  CA FAC ¶ 143.  This claim is without merit.[9]

3         As an initial matter, if the challenged requirements are statutorily authorized and comport

4  with the Spending Clause – which, as shown above, they do – it is unclear how "arbitrary or

5  capricious" scrutiny could otherwise limit the Department's broad discretion.  In any event, when

6  a court reviews an agency's action under the "arbitrary or capricious" standard, it is "required to

7  be 'highly deferential,'" and to "presum[e] the agency action to be valid" as long as it is

8  supported by a rational basis.  *Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th

9  Cir. 2010) (quoting *J & G Sales Ltd. v. Truscott*, 473 F.3d 1043, 1051 (9th Cir. 2007)).  This

10  standard of review is "narrow," and does not authorize a district court "to substitute its judgment

11  for that of the agency."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416

12  (1971).

13         Here, California's claim fails because "the agency's reasons for" imposing the subject

14  requirements "were entirely rational."  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 517

15  (2009).  Even assuming OJP's imposition of these requirements were subject to arbitrary-and-

16  capricious review notwithstanding the absence of any statutory standards governing the choice of

17  special conditions and priority purposes, it is reasonable for OJP to deny federal law enforcement

18  funding to a jurisdiction that publicly discloses sensitive federal law enforcement information in

19  an attempt to shield an alien or fugitive from detection or that refuses to provide information

20  about its laws or policies on communicating with federal immigration authorities.  That judgment

21  does not depend on a factual determination of the sort that California appears to demand.  It

22  simply requires asking whether OJP should blind itself to the disclosure of sensitive federal

23  information by state or local authorities to defeat federal law enforcement efforts regarding illegal

24  aliens or fugitives from criminal justice when distributing federal law enforcement funds, as well

25

26         [9] California also alleges that the challenged Byrne JAG requirements violate the APA
27  because they are allegedly unconstitutional and in excess of OJP's statutory authority.  CA FAC
   ¶¶ 133-138.  The above discussion of the underlying challenges disposes of that substantive APA
28  claim.

17

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

1   as to the public safety threats caused by that disclosure.  Indeed, the public-disclosure condition

2   protects some of the same information covered by the law enforcement exemption to the Freedom

3   of Information Act, which exempts from disclosure, among other things, information compiled

4   for law enforcement purposes whose disclosure "could reasonably be expected to interfere with

5   enforcement proceedings" or to "endanger the life or physical safety of any individual."  5 U.S.C.

6   § 552(b)(7).  Thus, the challenged Byrne JAG requirements are "common-sense measures,"

7   Admin. Record at AR00993, and "even in the absence of evidence, the agency's predictive

8   judgment (which merits deference) makes entire sense" as "an exercise in logic rather than

9   clairvoyance."  *Fox Television*, 556 U.S. at 521.

10       In any event, the Administrative Record submitted by the defendants further supports the

11   rationality of the challenged conditions.  Prompted partly by an Inspector General report

12   describing deteriorating local cooperation with "efforts to remove undocumented criminal aliens

13   from the United States," Admin. Record at AR00366, the Department of Justice under the prior

14   Administration instituted a requirement for FY 2016 Byrne JAG grantees to certify compliance

15   with 8 U.S.C. § 1373 in order to protect the exchange of information among federal, state, and

16   local law enforcement.  *Id*. at AR00392-97.  For the FY 2017 grant cycle, the Department

17   maintained that condition and added conditions similar to the interview and custody conditions

18   described above, to "increase[e] information sharing between federal, state, and local law

19   enforcement" so that "federal immigration authorities have the information they need to enforce

20   the law and keep our communities safe."  *Id*. at AR00993 (Backgrounder on Grant

21   Requirements).  The FY 2018 requirements responded to further developments, including, in

22   relation to the public-disclosure condition, at least one instance in which an elected official in

23   California publicly disclosed an impending federal law enforcement operation designed to

24   apprehend suspected illegal aliens.  *Id*. at AR01038-39.

25       Finally, as discussed above in relation to the Spending Clause, immigration enforcement

26   undoubtedly relates to criminal justice.  Numerous federal statutes expressly connect these two

27   subjects.  *See supra* text at 4-5.  The subject requirements thus rationally promote interests in

28

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

"maintain[ing] liaison" among tiers of government "in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), and comport with the intergovernmental cooperation that Congress plainly contemplates in immigration enforcement. *See, e.g.*, 8 U.S.C. §§ 1226(d), 1357(g), 1373; *Arizona*, 567 U.S. at 411-12 ("Consultation between federal and state officials is an important feature of the immigration system" and Congress "has encouraged the sharing of information about possible immigration violations.").

Accordingly, the public-disclosure condition – as well as the requirement to provide information about the applicant's laws and policies, to the extent plaintiffs challenge it – are rational, and this Court should not "substitute its judgment" for that of the Department of Justice. *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416.

### III.   California's Tenth Amendment Claim Misconstrues the FY 2018 Custody and Interview Conditions

In Count Three of its First Amended Complaint, California alleges that most of the INA provisions expressly cited in the FY 2018 Byrne JAG conditions cannot, under the Tenth Amendment, "be constitutionally applied to California's laws." CA FAC at 33. In other words, the State alleges that those provisions of the INA would violate the Tenth Amendment if interpreted as "apply[ing]" to plaintiff's statutes regarding non-cooperation with federal immigration authorities. *Id.* ¶¶ 124-126. The federal statutes involved in this claim are Sections 1226, 1231, 1357, 1366, 1373, and 1644 of Title 8, U.S. Code.[10] This Court has already addressed the constitutionality of Section 1373, and the defendants reiterate and incorporate herein their earlier arguments regarding that statute, which also apply to Section 1644. The remainder of this claim is without merit because the FY 2018 Byrne JAG conditions do not require California to comply with the other provisions – that is, 8 U.S.C. §§ 1226, 1231, 1357, and 1366.

---

[10] This claim does not include the public-disclosure condition, which the State calls "the § 1324 Requirement." *Compare* CA FAC ¶¶ 89-90 *with* id. ¶¶ 120-127. It also does not include the requirement to provide information regarding the applicant's laws and policies as part of a Byrne JAG application.

19

1   These statutes are expressly cited in the custody and interview conditions in the FY 2018

2   Byrne JAG Program.  Sections 1226(c)(1) and 1231(a) require federal immigration officials to

3   take custody of a criminal alien "when the alien is released" from state or local custody, and Section

4   1366 requires the Department to report to Congress each year on "the number of illegal alien

5   [felons] incarcerated in Federal and State prisons."  Section 1357(a) authorizes certain federal

6   officers and employees "without warrant . . . to interrogate any alien or person believed to be an

7   alien as to his right to be or to remain in the United States."  As for the Byrne JAG conditions, the

8   custody condition states that, "[c]onsonant with" Sections 1226, 1231, and 1366, a recipient may

9   not interfere with the process of removing aliens by failing to give immigration authorities as much

10   advance notice as practicable regarding the release of an alien upon request.  RJN, Ex. C ¶ 46, Ex.

11   D ¶ 46.  Similarly, the interview condition states that, "[c]onsonant with" Section 1357(a), a Byrne

12   JAG recipient may not interfere with the exercise of the authority to interrogate by impeding the

13   access of federal agents to the recipient's correctional facility to "interrogate any alien or person

14   believed to be an alien as to his [or her] right to be or to remain in the United States."  RJN, Ex. C

15   ¶ 45, Ex. D ¶ 45.

16   The custody and interview conditions, therefore, expressly cite these INA provisions to

17   underscore the Federal Government's interest and authority to require certain conduct by Byrne

18   JAG recipients, not to "apply" those provisions to recipients in the sense of requiring them to

19   comply with the statutes.  The conditions state that Byrne JAG recipients may not "interfere" with

20   these responsibilities of the Federal Government; thus, they are imposed in aid of the Govern-

21   ment's authority under the INA.  Therefore, there is no basis to assert that these Byrne JAG

22   conditions require California to abide by 8 U.S.C. §§ 1226, 1231, 1357, or 1366, and plaintiff's

23   Tenth Amendment claim is necessarily without merit.

24   **IV.    Any Injunction Should Be Limited to the Plaintiffs**

25   Finally, both of the plaintiffs seek a permanent injunction against use of the challenged

26   requirements in the Byrne JAG Program overall, without regard to the identity of the applicant or

27   grantee.  SF FAC at 27; CA FAC at 38.  Plaintiffs lack standing to seek such an injunction,

28

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

however.  As the Supreme Court has observed many times, a plaintiff "must establish standing separately for each form of relief sought," *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017), and a "plaintiffs' remedy must be limited to the inadequacy that produced [its] injury in fact," *Gill v. Whitford,* 138 S. Ct. 1916 (2018); see *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1244-45 (9th Cir. 2018) (reversing grant of nationwide injunction).  Moreover, as an equitable matter, nationwide injunctions "take a toll on the federal court system – preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch."  *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring); *see Virginia Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001) (noting tendency of nationwide injunctions to "thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue"), *quoted in Los Angeles Haven Hosp. v. Sebelius*, 638 F.3d 644, 664-65 (9th Cir. 2011).  Indeed, many of the issues presented herein regarding the FY 2018 Byrne JAG Program are, in fact, pending in multiple other cases throughout the country, *e.g*, *Los Angeles v. Whitaker*, No. 2:18-cv-07347-R-JC (C.D. Cal.); *City of Providence v. Whitaker*, No. CA-18-437-JJM-LDA (D.R.I.); *Chicago v. Whitaker*, No. 1:18-cv-06859 (N.D. Ill.); *Oregon v. Trump*, No. 6:18-cv-01959-MC (D. Or.), and a program-wide injunction by this Court would risk conflicting with any orders entered by other district courts.  At minimum, therefore, if the Court were to enter a nationwide injunction, its application beyond the plaintiffs should be stayed pending appeal.

## CONCLUSION

Accordingly, the Court should dismiss plaintiffs' challenges to the public-disclosure condition in the FY 2018 Byrne JAG Program and, to the extent plaintiffs challenge it, the requirement to provide information regarding the applicant's laws and policies on communication with federal immigration authorities as part of a Byrne JAG application, or the Court should enter judgment for the defendants on those challenges.

Dated:  December 3, 2018

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ALEX G. TSE
United States Attorney

JOHN R. TYLER
Assistant Director

/s/ W. Scott Simpson
_____
W. SCOTT SIMPSON (Va. Bar #27487)

Department of Justice, Civil Division
318 South Sixth Street, Room 244
Springfield, Illinois 62701
Telephone:   (202) 514-3495
Facsimile:    (217) 492-4888
E-mail:        scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

MATTHEW G. WHITAKER, Acting Attorney
General of the United States; MATT M.
DUMMERMUTH, Principal Deputy Assistant
Attorney General; and U.S. DEPARTMENT
OF JUSTICE

Defs' Motion for Partial Dismissal or SJ; Memo.
No. 3:18-cv-05146/05169-WHO